BREAUX, J.
Plaintiff was a party to a contract in which he bound himself as contractor to build a dwelling house for defendant in accordance with a plan which plaintiff, as architect, drew for defendant. In this instance plaintiff was employed by defendant, both as an architect and contractor. Lengthy specifications are annexed to the contract, in which all the work to be done Is described with particularity.
The contract contains a number of conditions; among them, that the contractor was to furnish all the materials and perform all the work mentioned in the specifications as shown on the drawings, which are before us with the record of appeal; and the contractor bound himself to diligently prosecute the work and, in case of his failure in this respect, then the owner was to have the right to terminate the contract, and himself take possession for the purpose of completing the work, and charge the contractor with the amount expended by the owner in finishing the work. The sum to be paid by the owner to the contractor for the work of building a house for defendant was to be $4,580. The house was to be complete on the 15th day of May, 1901.
There was some extra work done on the house by plaintiff, which has given rise to additional differences between plaintiff and defendant.
Plaintiff has received payment of amounts which have been properly credited. He claims that the balance of $1,622.71 is still due him, besides a large sum, which he sets up as having arisen because of his discharge by defendant.
The weight of the testimony shows that there was good cause to terminate the contract.
On the 27th of May, 1901, defendant, by letter, called on plaintiff to go on with the work, and hasten and deliver the house in accordance with contract.
This does not appear to have been done, and on the 5th of June following plaintiff was notified by defendant that he would complete the work, and defendant furnished him a statement prepared by an architect showing the work necessary to be done in order to complete the building.
From that time on defendant took charge. In thus acting he was within the terms of the contract, for it contains the stipulation that to defendant was given the right to terminate the contract if it became evident that the plaintiff was not complying with its terms and conditions to the satisfaction of the architect in charge. As there was no other architect in charge than the plaintiff, as before stated, who had prepared the plans as architect, and who had afterward taken the contract himself as contractor, it was possible for the defendant to call an architect to inspect the work done.
*578 The inspection was made by an architect employed to make it, and a report was written by him, which was communicated to plaintiff. Afterward, on the trial, the preponderance of the testimony showed that there were many defects. The rafters were not placed as required, nor the collar beams to hold the rafters; the weather boards on the exterior of the house were not uniformly lapped, so as to prevent the wind from forcing in the rain; the window frames and some of the door frames were out of level; and the result was that the sash, blinds, and transoms and doors were not fitted and finished in a workmanlike manner.
In addition to these and other defects in the work, there were also delays, as shown by the testimony on the trial, which the defendant had the right to invoke as a ground to set aside the contract.
The terms and conditions of the contract looked to a complete building at a specified time. The testimony shows that without good cause the building was not complete at the time appointed. Some 20 days after the appointed time to deliver the building complete to defendant, there was no prospect that the building would be completed at all before many more days.
Again, it was expressly stipulated that the contractor was to give the work his personal attention, and keep a competent foreman or substitute constantly on the work. This was not done, and accounts for the deficiency. Plaintiff and his foreman had other work of importance on hand, which seems to have taken up more time than the work just mentioned permitted for its proper execution. The contract contained peremptory conditions, and did not admit of entire absence of contractor or foreman during performance of the work.
Having concluded that defendant had good cause to discharge plaintiff, we come to the question of the value of labor, materials, plans, and specifications furnished by plaintiff, and for which defendant must account.
Under the terms of the contract, that value is to be ascertained by deducting the cost to complete the work in accordance with the contract.
As this clause of the contract (regarding the value to be ascertained in case it was terminated) has most important bearing upon the issues, we excerpt verbatim from the contract:
“If the balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense exceed such unpaid balance, the contractor shall pay the difference to the owner. * * * The expense by the owner as herein provided, either for furnishing materials or for furnishing the work and any damage incurred by such default shall be audited and certified by the architect, whose certificate shall be conclusive upon the parties.”
The contract provides with some particularity how the value of the work performed at the date of the discharge for cause was to be ascertained, but the mode of ascertaining this value is not exclusive. It was possible, within the provision of this clause, to call in other architects, as was done, to fix the amount in case the contract was brought to an end for any of the causes before mentioned.
The architect who superintended the work, after defendant had assumed control, fixed the value of the work performed, and furnished statements of them. He also testified that it took about six weeks to complete the house after defendant had taken charge.
Another architect, by whom the residence was examined, estimated the amount it would take to complete the building in accordance with the contract. Upon this defendant claims $606.56 as the amount it would take to complete the building.
These amounts have every appearance of being fair and just. We think they were properly credited by the judge of the district court to defendant’s account. The amount is conservative. All the testimony leads to the conclusion that it will take at least that sum to complete the building as required by the terms of the contract.
Plaintiff’s work has not met with the approval of his fellow architects, who were competent to pass upon its sufficiency ánd workmanlike nature. They inspected it carefully, and upon their judgment the amount was properly found due by plaintiff.
Generally, those who exercise the profession of architect have skill and knowledge, which place their testimony above that of *580 the layman in the matter of architecture. They have decided against their fellow architect. We have not found wherein they were in error. The well-known architect Mr. An-dry, who examined the work at the instance of plaintiff, while not agreeing that there were as many defects as found hy the architects for the defendant, yet testified that he “found that some portion of the work was not well done ”
This brings us to a consideration of the objection urged to the reconventional demand on the ground that it was not susceptible of proof; that it did not set out defendant’s claim with sufficient precision.
The nature and character of the work was sufficiently detailed in the reconventional demand, and the objection to the work was clearly enough alleged to admit of proof. The court on the trial safeguarded plaintiff’s interest, by holding, at the time that plaintiff raised objection to the testimony on the ground of insufficiency of allegation of the re-conventional demand, that if, by reason of any vagueness which the court had not at the time discovered, it appeared that plaintiff was prejudiced, an opportunity would be granted to overcome anything of that nature.
We think this point raised by plaintiff is technical, and affords no ground, in view of the ruling made, to set aside the decision of the district court.
With reference to items which were properly deducted from the amount due by defendant to plaintiff under the terms of the contract, we come, in the first place, to the “flashing” done for the purpose of stopping leaks around the windows and cornices. The testimony shows that this is necessary to complete a building and do a workmanlike job. The other items are equally sustained by proof, except the two before mentioned. There is, it is true, conflict of testimony, but close examination finds that there was reason to allow these different items to be charged, except the two to which we will again refer in a moment.
The extra work came in next for our consideration. It was well stipulated in the contract that the builder would not charge for extra work, unless ordered in writing. This clause in a contract is not strictly binding upon the parties to it when both agree to alterations and changes. They may choose, as between themselves, to make changes and alterations. The agreement made subsequent to the contract, supported by conclusive verbal testimony, would be binding. But here plaintiff’s testimony is contradicted by that of defendant, and plaintiff has not succeeded in showing that the amount he claims for extra work is due.
Plaintiff also claims an amount for the plan which he prepared as an architect and which he executed as a builder. The testimony shows this charge is unusual when the contract is awarded to the architect by whom the plan is made.
We have added the credits and deducted the debits therefrom, and found a balance of $11.14 due by plaintiff to defendant, and we accordingly amend the judgment appealed from by reducing the amount of the judgment to the sum just stated.
It is therefore ordered, adjudged, and decreed, for reasons assigned, that the judgment be amended by reducing it to $11.14, and, as amended, it is affirmed.
Appellee to pay costs of appeal.